UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLORIA J. JACKSON | : | |
| 6038 Chestnut Street | : | CIVIL ACTION |
| Philadelphia, PA 19139 | : | |
|                Plaintiff, | : | |
|     v. | : | |
| DREAM HOME REMODELING, INC. | : | DOCKET NO.: 02-CV-4027 |
| d/b/a American Dream Remodeling | : | |
| 420 Park Road, Suite 210 | : | |
| Reading, PA | : | |
| | : | |
| 12 Hull Street | : | |
| Sinking Springs, PA 19608 | : | |
|     and | : | |
| MILLENNIUM CAPITAL CORPORATION | : | |
| 12 S. Hull Street | : | |
| Sinking Springs, PA 19608 | : | |
|     and | : | |
| HEATHER FRANCAVAGE | : | |
| 139 Marion Lane | : | |
| Shillington, PA | : | |
|     and | : | |
| CHELSEA SETTLEMENT SERVICES, INC | : | |
| 5010 E. Trindle Road, Suite 200 | : | |
| Mechanicsburg, PA 17050 | : | |
|     and | : | |
| JOSEPH SCHLAMOWITZ a/k/a | : | |
| JOSEPH BURGER | : | |
| 2320 Penn Avenue | : | |
| West Lawn, PA | : | |
|     and | : | |
| A.J. LEEMAN, A/K/A | : | |
| ALFRED GEORGE LEEMAN, IV | : | |
| 420 Park Road, Suite 210 | : | |
| Reading, PA | : | |
|     and | : | |
| WOODIE ZIMMERMANN | : | |
| 12 S. Hull Street | : | |
| Sinking Springs, PA 19608 | : | |
|     and | : | |
| FIRST UNION NATIONAL BANK | : | |
| OF DELAWARE | : | |
| 920 King Street | : | |
| Wilmington, DE 19801 | : | |
|                Defendants. | : | |

_____ :
## AMENDED COMPLAINT

A.   **PRELIMINARY STATEMENT**

This is an action by an elderly, ill home owner to recover damages from a subprime predatory lender, the loan broker, the remodeler, the settlement servicer (Title Insurance Corporation), the loan servicer and certain named individuals who negligently and/or fraudulently refinanced the plaintiff's secured loan with Delaware Valley Federal Credit Union with a Home Equity Debt Consolidation loan in an amount double her previous loan and took a first mortgage out on her house as collateral.  Plaintiff brings this case under the Truth and Lending Act, 15 U.S.C. §1601, *et seq.* ("TILA");  The Home Ownership and Equity Protection Act of 1994;  ("HOEPA"), 15 U.S.C. §1602;  Regulation Z §226.32(c)(d);  Pennsylvania's Unfair Trade Practices;   ("Consumer Protection Law"), 73 P.S. §182.6;  ("ECOA"), Equal Credit Opportunity Act, 15 U.S.C. §1691(d)(2);  12 C.F.R. §202(a)(1)(i);  ("HIFA"), Home Improvement Finance Act, 15 U.S.C. §1691(a);  73 P.S. §500-200 *et seq.*;   73 P.S. §500-407; and under State Common Law claims of fraud and Breach of Contract and inflection of emotional distress.  Plaintiff seeks to enforce her right to rescind the consumer credit transaction at issue, to void defendant, First Union National Bank of Delaware's security interest in her home and to recover actual damages, treble damages, statutory damages, punitive damages and attorney's fees and costs.

B.   **JURISDICTION AND COSTS**

1.   Jurisdiction over this matter is conferred upon this Court by TILA, 15 U.S.C. §1640(e) and 28 U.S.C. §1331.

2. Supplemental jurisdiction over plaintiff's state law claims is granted by 28 U.S.C. §1367(a).

3. Venue lies in this judicial district as the events which gave rise to this claim occurred within this district and the property which is the subject of the action is situated within this district.

**C.    PARTIES**

1. Plaintiff, Gloria J. Jackson, is an individual residing at 6038 Chestnut Street, Philadelphia, PA 19139.

2. Defendant, Dream Home Remodeling, Inc., doing business as American Dream Remodeling is a corporation engaged in the business of home remodeling at the time relevant to this Complaint in Pennsylvania with a place of business located at 420 Park Road, Suite 210, Reading, PA and 12 Hull Street, Sinking Springs, PA. Defendant's headquarters and legal department are located at 420 Park Road, Suite 210, Reading, PA.

3. Defendant, Alfred George Leehman, IV, a/k/a A.J. Leehman is Chief Executive Officer, secretary and treasurer of Defendant Dream Home Remodeling, Inc. with a place of business located at 420 Park Road, Suite 210, Reading, PA.

4. Defendant, Woodie Zimmermann, is an individual engaged in the business of home remodeling at the time relevant to this Complaint with Dream Home Remodeling, Inc. in Pennsylvania with a business address of 12 S. Hull Street, Sinking Springs, PA.

5. Defendant, Millennium Capital Corporation, is a corporation engaged in the business of consumer lending at the time relevant to this Complaint in Pennsylvania and

elsewhere with a place of business located at 12 S. Hull Street, Sinking Springs, PA. Defendant's headquarters and legal department are located at 139 Merion Lane, Shillington, PA.

6. Defendant, Heather Francavage, is Chief Executive Officer, secretary and treasurer of Defendant Millennium Capital Corporation with a place of business located at 139 Marion Lane, Shillington, PA.

7. Defendant, Joseph Schlamowitz a/k/a Joseph Burger, is an individual engaged in loan brokering at the time relevant to this Complaint with Millennium Capital Corp. in Pennsylvania with an address of 2320 Penn Avenue, West Lawn, PA.,12 S. Hull Street, Sinking Springs, PA.

8. Defendant, Chelsea Settlement Services, Inc., is a corporation engaged in the business of settlement services at the time relevant to this Complaint in Pennsylvania with a place of business located at 5010 E. Trindle Road, Suite 200, Mechanicsburg, PA. Defendant's headquarters and legal department are located at 5010 E. Trindle Road, Suite 200, Mechanicsburg, PA.

9. Defendant, First Union National Bank of Delaware, is a corporation engaged in the business of consumer lending at the time relevant to this Complaint in Pennsylvania and elsewhere with headquarters and legal department located at 920 King Street, Wilmington, DE.

**D. FACTUAL ALLEGATIONS**

1. At all relevant times hereto, defendants acted by and through their duly authorized agents, servants and/or employees who acted in the scope of their employment and in furtherance of the business of defendants with regard to all matters listed in this Complaint.

2. At all times relevant hereto, defendant, Dream Home Remodeling, Inc., Millennium Capital Corporation, Heather Francavage, Chelsea Settlement Services, Inc., A.J. Leehman a/k/a Alfred George Leehman, IV, Joseph Schlamowitz a/k/a Joseph Burger, Woodie Zimmermann, First Union National Bank of Delaware were acting in concert and/or as agents and/or as representatives and/or as employees of each other with regard to all actions referenced herein.

3. Plaintiff believes and therefore avers that there is a relationship between each of the defendants, Dream Home Remodeling, Inc., Millennium Capital Corporation, Heather Francavage, Chelsea Settlement Services, Inc., A.J. Leehman a/k/a Alfred George Leehman, IV, Joseph Schlamowitz a/k/a Joseph Burger, Woodie Zimmermann, First Union National Bank of Delaware, wherein each is acting as either the parent and/or subsidiary and/or shell of the other.

4. Plaintiff, Gloria J. Jackson is a retired widow who is terminally ill. Ms. Jackson lives alone at her residence at 6038 Chestnut Street, Philadelphia, PA 19139.

5. As of June 2001 Ms Jackson owned her home, the residence at 6038 Chestnut Street. Philadelphia, PA 19139.

6. Ms. Jackson's home had no mortgage against it previous to June 2001.

7. Ms. Jackson had a loan with Delaware Valley Federal Credit Union at 1355 West Cheltenham Avenue in Elkins Park, PA. This loan was taken on October 16, 2000 in the amount of $16,413.20. The interest rate on this loan was 9 percent.

8. Ms. Jackson had cashed in her IRA to serve as collateral for the loan.

9. Ms. Jackson never fell behind in her loan payments and was in good standing with Delaware Valley Federal Credit Union.

10. In May of 2001, Ms. Jackson received a phone call from Joseph Burger a/k/a Joseph Schlamowitz, agent of Defendant Millennium and/or Woodie Zimmermann, agent of Defendant Dream Home Remodeling, Inc. asking Ms. Jackson if she needed any remodeling done in her home.

11. Ms. Jackson responded that she would like it if her basement was remodeled. Mr. Burger and Mr. Zimmermann then proceeded to ask her if she had the money to pay for the remodeling. Ms. Jackson said she did not. Mr. Burger and Mr. Zimmermann then proceeded to ask her if she wanted to take out a loan to pay for the remodeling.

12. Defendants Burger and Zimmermann then asked Ms. Jackson if she had any other loans outstanding that she wanted to consolidate with the loan that she would take out for her basement remodeling. Ms. Jackson said that she did have a $16,413.00 loan with the Federal Credit Union.

13. Mr. Burger and Mr. Zimmermann offered to get Ms. Jackson a loan for, not only the $16,200.00 it would cost to remodel the basement, but also for the $16,775.00 debt she had at that time with the Federal Credit Union.

14. Dream Home Remodeling, Inc., told Plaintiff that they would undertake arranging financing for her for $37,000.00.

15. Soon thereafter, still in May of 2001, Mr. Zimmermann came to the plaintiff's home for the stated purpose of taking measurements of her basement related to the remodeling.

16. At about that time, Ms. Jackson signed a contract accepting Dream Home Remodeling, Inc's offer for basement remodeling in the amount of $16, 200.00.

17. Ms. Jackson was then contacted by telephone by Joe Burger a/k/a Joseph Schlamowitz of Millennium Capital Corporation who told her she was going to get a loan of $37,000.00. Mr. Burger stated that he was calling from Millennium Capital Corporation. Ms. Jackson did not independently obtain or contract for a loan directly from Millennium Capital Corporation.

18. On approximately June, 22, 2001, Messers Berger and Leehman visited Ms. Jackson in her home with many papers for her to sign, including but not necessarily related to a mortgage, promissory note, an HUD 1 and a consummated settlement.

19. Soon thereafter, still in June 2001, Ms. Jackson received a check in the amount of $14,987.04 made payable to the credit union, and a separate check in the amount of $1,788.74 made out to her. Ms. Jackson then took both checks to the credit union and paid off her loan in the amount of $16,775.00 with them.

20. Dream Home Remodeling, Inc. received 2 checks each in the amount of $8,100.00 for a total of $16,200, the total price of the renovations for Dream Home Remodeling, Inc. as stated on the HUD 1 on or around June 2001, before any work was completed.

21. The HUD 1 shows charges that are questionable and not properly included as finance charges of the loan.

22. Thereafter, Ms. Jackson, now awaiting the remodeling of her basement, began to telephone Dream Home Remodeling, Inc. an almost on a daily basis to request the remodeling begin.

23. No one was responsive to her inquiries.

24.     Only once did Woody Zimmermann answer her call and told her that they were closing and that he wasn't going to work there anymore.

25.     On October 10, 2001, Ms. Jackson received a letter from A.J. Leehman a/k/a Alfred George Leehman, stating that American Dream Remodeling (Dream Home Remodeling, Inc.) was insolvent and out of business due to September 11th.

26.     Ms. Jackson has never gotten her basement remodeled.

27.     Ms. Jackson is left with a loan with First Union National Bank of Delaware who holds a first mortgage to her home in the amount of $37,000.00.

28.     The total amount that she will have paid Defendant after she makes all her payments is $98,200.80.

29.     Ms. Jackson makes payments in the amount of $272.78 on this loan monthly for the next 30 years.

30.     The loan is being serviced by Home EQ Servicing Corporation.

31.     Ms. Jackson gets about $800.00 per month to live from.

32.     Ms. Jackson receives Social Security Disability as her only annual income equally approximately $10,000.00 a year.

33.     With this $800.00 she has to pay her electric bill, her insurance for her home and her car, her water bill, telephone bill, food and some medication.

34.     In addition to her necessary expenses she now incurs an obligation of making a payment to the defendant bank in the amount of $272.78 a month for the next 30 years.

35. Ms. Jackson was never given three (3) days notice by defendant First Union National Bank of Delaware or any of the Defendants previous to closing that she could not reject the terms of the loan.

36. Defendant, Millennium Capital Corporation and First Union National Bank of Delaware never subsequently offered to re-finance plaintiff's loan.

37. Defendant, Millennium Capital Corporation and First Union National Bank of Delaware failed to deliver the plaintiff copies of loan documents signed by plaintiff that of the closing, including two copies of Notification of Plaintiff's Right to Cancel.

38. Defendant Millennium Capital Corporation and First Union National Bank of Delaware failed to provide plaintiff with accurate copies of certain loan documents subsequent to closing including an accurate copy of the mortgage note.

39. Defendant Chelsea Settlement Services paid Dream Home $16,200.00 directly without instruction or permission from the plaintiff, and before any work was performed.

40. Plaintiff paid $2,110.00 broker's fee to Millennium Capital Corporation as a condition to get the loan.

41. Millennium provided no valuable services of any kind to the plaintiff and certainly did not provide services in the amount of $2,110.00.

42. Plaintiff was never provided with a notice of her right to cancel the purported broker agreement in violation of 73 Pa. Statute §201-7. Plaintiff has a continuing right to rescind the purported contract and hereby exercises that right.

43. If Millennium was in fact acting as a mortgage broker for the plaintiff, its conduct in steering her to a high priced loan re-financing transaction with points and fees in excess of 8%

of the loan, re-financing her Federal Credit Union Loan that didn't require a first mortgage, was a gross violation of its fiduciary duty to towards the plaintiff.

44.     All of the defendants took advantage of plaintiff in order to have them enter into a grossly one-sided, over-priced and disadvantageous loan transaction.

45.     At all times relevant times hereto, defendant, Millennium acted as an agent for defendant, First Union National Bank of Delaware in that they performed numerous lender functions including taking a loan application, gathering supporting information, arranging an appraisal and in numerous other respects.

46.     All of the defendants were parties to an agreement or conspiracy to omit material facts in their dealings with plaintiff, including but not limited to:

    (a)     failing to clearly explain the role of the broker and the amount and basis of compensation prior to becoming involved and performing services;

    (b)     failing to clearly explain the defendants motives in requiring plaintiff to borrow addition sums of money in addition to the basement remodeling, so that First National Bank of Delaware could have a first mortgage loan and therefore evade Pennsylvania usury laws;

    (c)     failing to clearly explain the advantages and disadvantages of a consolidation loan;

    (d)     deceiving plaintiff about her right of recission; and

    (e)     loaned her a great amount without regard to her ability to pay.

47.     Plaintiff reasonably relied on the mis-representations and omissions of the defendants in agreeing to close the loan and suffered damages as a result.

E.  **PLAINTIFF'S CAUSE OF ACTION**

### COUNT I - TILA RECISSION

1. The Plaintiff's loan with First Union National Bank of Delaware was a residential mortgage loan subject to the plaintiff's right of recission as described by 15 U.S.C. §1635 and Regulation Z §226.23 (12 C.F.R. §226.23).

2. Defendant, First Union National Bank of Delaware failed to deliver all "material" disclosures required by the Act and Regulation Z.  The disclosure violations include, but are not limited to:

   (a) failing to properly and accurately disclose the "amount financed," using that term in violation of Regulation Z §226.18(b) and 15 U.S.C.§1638(a)(2)(A);

   (b) failing to clearly and accurately disclose the "finance charge," using that term, in violation of Regulation Z §§226.4 and 226.18(d) and 15 U.S.C. §1638(a)(3);

   (c) failing to clearly and accurately disclose the "annual percentage rate," using that term in violation of Regulation Z §226.18(e) and 15 U.S.C. §1638(a)(4);

   (d) failing to comply with the special disclosure requirements of §226.32.

3. The plaintiff has a continuing right to rescind the transaction until receipt of all "material" disclosures described above, pursuant to 15 U.S.C. §1635(a) and Regulation Z §226.23(a)(3).

4. As a result of the violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§1635(a) and 1640(a), defendant First Union National Bank of Delaware and all other Defendants are liable to plaintiff for one or more of the following:

(a) recission of this transaction, including a declaration that plaintiff is not liable for any finance charges or other charges imposed by defendant;

(b) termination of any security interest in plaintiff's property created under the transaction;

(c) return of any money or property given by the plaintiff to anyone, including the defendants, in connection with this transaction;

(d) statutory damages of $2,000.00;

(e) forfeiture of return of loan proceeds;

(f) actual damages in an amount to be determined at trial;

(g) an award of reasonable attorney's fees and costs.

## COUNT II -HOEPA EARLY DISCLOSURES

5. The Plaintiff's loan with First Union National Bank of Delaware was a high rate loan within the meaning of 15 U.S.C. §1602(aa)(1)(B), in that the total points and fees defendants charged plaintiffs in addition to interest exceeded eight percent (8%) of the total loan amount.

6. Because the transaction met the statutory definition of a high rate mortgage, it was subject to the additional disclosure requirements imposed by the TILA amendments contained in the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. §1639(a)("HOEPA").

7. Said additional disclosures must be provided three days in advance of the consummation of the transaction. 15 U.S.C §1639(b).

8. Defendants did not comply with the requirements of HOEPA and Section 32.

9. Defendants failure to provide plaintiff with accurate and timely HOEPA disclosures, as required by law, constituted a "material" disclosure violation under the Truth-in-Lending Act, 15 U.S.C. §1602(u) (as amended), Reg. Z §226.23 m.48 (as amended).

10. As a result of Defendants failure to provide accurate early HOEPA disclosures, plaintiffs are entitled to rescission, statutory damages of $2,000.00 and statutory damages equal to the sum of all finance charges and fees paid by them, pursuant to 15 U.S.C. §1640(a)(4), and costs and attorney's fees.

11. Plaintiff believes and therefore alleges that Defendant First Union National Bank of Delaware and its agents herein has adopted underwriting standards that do not adequately measure ability to repay, allows exceptions to its guidelines, and does not have sufficient verification procedures to ensure that borrowed income is adequately determined and considered.

12. Plaintiff believes and therefore alleges that Defendant First Union National Bank of Delaware and its agents herein has engaged in a pattern or practice of making loans to borrowers with high cost mortgage loans without regard to their ability to pay, in violation of HOEPA, 15 U.S.C. §1639(f), including the loan made to Plaintiff Ms Jackson.

13. Plaintiff Ms Jackson is therefore entitled to rescission of her mortgage loan, together with appropriate declaratory and injunctive relief and actual and statutory damages.

**COUNT III - ECOA**

14. First Union National Bank of Delaware and its agents failure and refusal to provide small loans for home improvements, and its insistence on refinancing the homeowner's

prior loans, has a discriminatory impact on African-American elderly homeowners and on neighborhoods with substantial percentages of African-American homeowners.

15.  As a result of First Union National Bank of Delaware and its agents violation of ECOA, Plaintiff Ms Jackson is entitled to actual and punitive damages and attorneys fees, pursuant to 15 U.S.C. §1691e.

16.  As a result of First Union National Bank of Delaware and its agents violation of ECOA, First Union National Bank of Delaware is liable to Ms Jackson pursuant to 15 U.S.C. §1691e(b), including, but not limited to, actual damages in the amount of the points charged by First Union National Bank of Delaware on the amount of the loans in excess of the amount of the loan initially sought by the borrower.

## COUNT IV - UDAP - ALL DEFENDANTS

17.  The conduct of defendants constituted an "unfair or deceptive practice" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq.*, in that, among other reasons,

(a)  they imposed credit costs and charges expressly prohibited by Federal and Pennsylvania law, which is a *per se* unfair or deceptive practice;

(b)  failure to provide disclosures and notices pursuant to TILA and ECOA;

(c)  all Defendants represented to Plaintiff that the consolidation and refinancing of their pre-existing debt would be beneficial to her when in fact it was not, 73 P.S. §2012(v);

(d)  all Defendants engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding, 73 P.S. §201-2(xxi),

18. Defendants are liable to Plaintiff for treble damages, attorney's fees and other appropriate relief, pursuant to 73 P.S. §201-9.2.

19. The credit transactions between Plaintiff and certain class members and First Union National Bank of Delaware were home improvement installment contracts within the meaning of HIFA.

20. The transactions were structured in violation of an express prohibition in HIFA, section 500-407, against charging consumers fees, costs, commissions or other charges not authorized by the act. The transactions also included consolidation of other cash loans, in violation of section 500-408 of HIFA.

21. Under Act 6 and the CPL, Plaintiff is entitled to recover damages of three times the amount of the excess charges paid, plus reasonable attorney's fees and costs. 41 P.S. §§502, 503; 73 P.S. §201-9.2.

22. First Union National Bank of Delaware aids and abets the violation of Pennsylvania's CSA and CPL laws by brokers, and/or is engaged in a civil conspiracy with brokers to violate Pennsylvania law. First Union National Bank of Delaware fails to require brokers to submit a signed broker agreement with any loan application, and instead only required that the agreement be provided and signed at closing.

23. First Union National Bank of Delaware also uniformly fails to insure that any broker contract entered into as a result of a door-to-door sale or telephone solicitation contains the three-day cancellation notice required by Pennsylvania Law, 73 Pa. Stat. §201-7, and fail to include the FTC's Preservation of Claims and Defenses notice in contracts when its inclusion is required.

24. Defendants' conduct constitutes "unfair and deceptive acts and practices" prohibited by Pennsylvania's CPL. Plaintiff class members suffered damages including, but not limited to, the illegal broker fees, as a result. Class members are entitled to rescission and treble damages.

## COUNT V - BREACH OF FIDUCIARY DUTY
## BY DEFENDANT MILLENNIUM

25. Defendant Millennium held itself out as having special knowledge and expertise regarding mortgage lending.

26. Defendant Millennium purportedly contracted with Plaintiff to act as their agent in applying for financing for their home improvements, and therefore owned Plaintiff a fiduciary duty and a duty of loyalty.

27. Defendant Millennium breached its duties to Plaintiff by failing to explain and disclose clearly to them how and how much they would be compensated, and by arranging an expensive and financially disadvantageous first mortgage loan for Plaintiff.

28. As a result of Defendant Millennium's action, Plaintiff is in a far worse financial position today than prior to their signing the loan.

29. Millennium's conduct in deceiving Ms Jackson was intentional and outrageous.

## COUNT VI - FRAUD BY DEFENDANTS
## DREAM HOME REMODELING, INC., MILLENNIUM CAPITAL CORPORATION
## AND FIRST UNION NATIONAL BANK OF DELAWARE

30. All Defendants made material misrepresentations and omitted material information in order to induce Ms Jackson to consummate the home equity loan, including, but not limited to:

  (a) the failure to disclose to them that a broker was being engaged who would be paid separately from the lender and that the broker agreement was a separate agreement that they had three days to cancel if they so chose;

  (b) the representations made to them at the loan closing that the home equity loan was beneficial and necessary for them to get the loan;

  (c) failing to clearly explain the Defendants' motives in requiring Ms Jackson to borrow additional sums to pay her secured debt, so that First Union National Bank of Delaware could have a first mortgage loan and therefore evade Pennsylvania usury laws.

  (d) the representations made to them at the loan closing that the home equity loan was beneficial and necessary for them to get the loan;

31. Plaintiff does not have executed documents referred to above to attach to her Complaint, as Defendants never provided her with copies of such documents.

32. The above misrepresentations and omissions were made with knowledge of their falsity and with the intent to induce Ms Jackson to enter into the contracts, the Plaintiffs reasonably relied on them and suffered damages as a result.

## COUNT VII - RESPA

33. First Union National Bank of Delaware makes or invests in residential real estate loans aggregating more than #1 million per year. The transactions at issue in this case were, therefore, "federally related mortgage loans" within the meaning of sections 2602 and 2607 of RESPA.

34. In the course of the transaction with Plaintiff Ms Jackson, and the transactions with members of the Class, Defendant First Union National Bank of Delaware gave, and the

brokers received, a fee, kickback or thing of value pursuant to an understanding between the broker and First Union National Bank of Delaware that the broker would refer business to First Union National Bank of Delaware, in violation of 12 U.S.C. §2607 (a).

35. In the course of the transaction with Plaintiff Ms Jackson, and the transactions with members of the Class, First Union National Bank of Delaware gave the brokers a portion, split or percentage of the settlement charges collected from the borrowers, other than for services actually performed by the brokers, in violation of 12 U.S.C. §2607 (b).

36. As the result of these violations of RESPA, Defendant First Union National Bank of Delaware is liable to Plaintiff Ms Jackson and the Class, pursuant to 12 U.S.C. §2607 (d) for statutory damages in the amount of three times the broker fees imposed, plus reasonable attorneys fees and costs.

## COUNT VIII - BREACH OF CONTRACT
### PLAINTIFF VS. DEFENDANT DREAM HOME REMODELING, INC.

37. Defendant Dream Home Remodeling, Inc. doing business as American Dream Remodeling and Plaintiff Ms Jackson entered into a Home Basement Remodeling Contract dated May 29, 2001 (Attached here to as Exhibit "A").

38. Defendant Dream Home Remodeling, Inc. failed to perform said basement remodeling and therefore failed to perform.

WHEREFORE, Plaintiff demands judgment against the Defendants, individual, jointly and severally, in the amount of $16,2000.00 plus interest thereon.

## COUNT IX - PUNITIVE DAMAGES
### PLAINTIFF VS. ALL DEFENDANTS

39. At the date and time that Plaintiff Ms Jackson and Defendants entered into the above-described basement remodeling contract the Defendants knew or should have known that their conduct of intentionally inducing Plaintiff to take out a large loan and allow a first mortgage on her home for basement remodeling work that Defendant's never intended to furnish as set forth in the foregoing paragraphs and Defendant's willful breach of the statutes mentioned herein.

40. An intentional, reckless and willful indifference to the risk of damage to the Plaintiff.

WHEREFORE, Plaintiff demands punitive damages against the Defendants, individually, jointly and severally.

## COUNT X – INFLICTION OF EMOTIONAL DISTRESS

41. At all times relevant hereto, Defendant Dream Home Remodeling, Inc., its agents, servants and employees, knew or should have known that the Plaintiff was particularly susceptible to emotional distress by reason of her age and her fragile condition.

42. The conduct of the Defendant, its agents, servants and employees, was extreme, outrageous, and was committed intentionally and/or recklessly and caused the Plaintiff to suffer severe emotional distress. Said conduct included, but is not necessarily limited to:

(a) Inducing Plaintiff into accepting a 1st mortgage loan in the total amount of $98,200.80.

43. As a direct and proximate result of the intentional extreme and outrageous conduct resulting in severe emotional distress to the Plaintiff, the Plaintiff has suffered injuries as more fully stated above.

WHEREFORE, Plaintiff demands compensatory, consequential and treble damages from the Defendants, together with interest, costs of court, attorneys' fees and such other relief as this Court deems just and proper.

**FELDMAN & PINTO, P.C.**

**Dated:** July 2, 2002          **BY:**_____
Rosemary Pinto, Esquire
1604 Locust Street, 2R
Philadelphia, PA 19103
Telephone No.: (215) 546-2604
Fax No.: (215) 546-9904
    And
Jack M. Bernard, Esq.
2121 Land Title Building
100 S. Broad Street
Philadelphia, PA 19110-1021
Telephone No: (215)665-0666
Fax No: (215)665-0206
Co-Counsel

C:\WINDOWS\TEMP\Second Complaint.wpd